UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NICHOLAS D. SCOYNI,<br><br>      Plaintiff,<br><br>      v.<br><br>DANIEL R. SALVADOR,<br>CHRISTOPHER A. SALVADOR,<br>WAYNE J. SALVADOR, WILLIAM<br>WARDWELL, (Offspec Solutions,<br>LLC, Offspec Solutions Southeast, et<br>al.),<br><br>      Defendants. | Case No. 1:18-cv-00506-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Pending before the Court are the parties' cross motions for summary

judgment and an attendant motion to strike filed by Plaintiff. Dkt. 75; Dkt. 83; Dkt.

90. The motions are ripe for the Court's consideration. In the interest of avoiding

delay, and because the Court finds the decisional process would not be

significantly aided by oral argument, the motions will be decided on the record.

Dist. Idaho L. Rule 7.1(d). As discussed more fully below, the Court will deny

Plaintiff's motions and grant Defendants' motion.

## BACKGROUND

The claims in this case center on alleged trademark infringement. Defendant Off-Spec Solutions, LLC, is a trucking-based goods transportation company that began providing services on or around August 2012. Dkt. 3 at ¶ 4. Defendants Daniel and Christopher Salvador ("Salvador Defendants") are brothers who own Off-Spec Solutions, LLC. Dkt. 83-2 at 2, 3. Plaintiff Nicholas D. Scoyni worked for Off-Spec Solutions, LLC as a truck driver from July 2015 through February 2017. *Scoyni Dep.* at 23, Dkt. 83-6; Dkt. 75-1 at 1.

Mr. Scoyni asserts that in 2012, he entered into an oral contract with Christopher Salvador, permitting Defendants to use Mr. Scoyni's alleged trademark "Off Spec Solutions S.E." for their trucking business. *Compl.* at 5, Dkt. 1. Mr. Scoyni alleges that the Defendants breached the oral contract by using variations of the Off Spec Solutions mark without paying him. *Id.* at 6. Mr. Scoyni alleges further that Defendants defamed him by damaging his business relationships through a web-based smear campaign. *Id.* at 6-7. In his complaint, Mr. Scoyni asks the Court to issue an injunction directing Defendants to cease and desist from use of any mark that has a likelihood of confusion with his Offspec-based trade names or service marks. *Id.* at 8. Mr. Scoyni seeks damages for Defendants' alleged trademark infringement, breach of the oral agreement, and for the damages to his business caused by Defendants' alleged defamation. *Id.*

Defendants Daniel R. Salvador, Christopher A. Salvador, Wayne J. Salvador, Off-Spec Solutions, LLC, and Off-Spec Solutions Southeast (hereinafter "Off-Spec Defendants") filed a joint answer denying all claims and included a counterclaim to invalidate Plaintiff's trademark filings. *Off-Spec Ans. and Counterclaim*, Dkt. 41. On October 1, 2019, Plaintiff filed the pending motion for summary judgment on all claims. Dkt. 75. Off-Spec responded by filing its own motion for summary judgment, which also seeks judgment as to all claims and asks the Court to find Plaintiff's issued trademark *void ab initio*. Dkt. 83. Finally, on November 8, 2019, Plaintiff filed the pending motion to strike Dockets 88 and 89, arguing that Defendants failed to timely submit the documents, and that the documents are "unintelligible, vague and ambiguous."

Before turning to the cross-motions for summary judgment, the Court will address Plaintiff's motion to strike. Docket 88 is Defendants' memorandum in response to two earlier motions filed by Plaintiff, a previous motion to strike, Docket 81, and a motion to treble the damage award, Docket 82. On December 16, 2019, the Court issued an order denying each of these motions. Dkt. 93. Therefore, Plaintiff's motion to strike Docket 88 is moot. Docket 89 is Off-Spec Defendants' reply in support of their motion for summary judgment. The reply was due on or before November 6, 2019. *See* Dkt. 86. The reply at Docket 89 was filed on

November 5, 2019. Therefore, the reply was timely and Plaintiff's motion to strike is without merit and will be denied.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any material fact—a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the court is

not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When cross-motions for summary judgment are filed, the court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment—where both parties essentially assert that there are no material factual disputes—does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

## ANALYSIS

Plaintiff's motion for summary judgment centers on the allegation that there is no dispute of material fact that, in 2012, he entered into an oral agreement with Defendant Christopher Salvador regarding the use of the Off-Spec Solutions trademarks. *See* Dkt. 75. Housed in this argument, is the assertion that there is no genuine dispute that Plaintiff owned the attendant trademarks. *Id.* Plaintiff asserts also there is no genuine dispute of material fact that Defendants defamed him. *Id.*

In turn, Off-Spec Defendants seek summary judgment on each of Plaintiff's claims, asserting the undisputed record shows Plaintiff never had a valid, protectible interest in his purported trademark –under either State or Federal law– prior to Defendants adoption and use of the mark, "Off-Spec Solutions" in commerce. Off-Spec Defendants also ask the Court to grant summary judgment on

their counterclaims, asking that the Court issue an order declaring Plaintiff's trademark registration is cancelled and void *ab initio* because (1) Plaintiff did not provide evidence that he used the mark in commerce before the application date; and (2) Defendants have shown they used the mark "Off Spec Solutions" prior to Plaintiff's later use and adoption of the mark. The Court will address the merits of the defamation claim, prior to turning to the claims centered on the trademark dispute.

## 1.    Defamation Claim

Plaintiff asserts that Defendants defamed him by engaging in a "spear campaign" to damage Plaintiff's business to the point of irreparable harm. Dkt. 1 at 7. Each party seeks summary judgment in their favor as to Plaintiff's defamation claim.  As explained below, the Court finds the claim is meritless, being without basis in fact or law.

Plaintiff alleges his defamation claim is supported by a cease and desist letter sent by Defendants' attorney to another third-party once employed by Off-Spec Defendants; Defendants' actions in representing themselves as "The Real offspec" on Facebook, Tumbler, Pinterest, and other social media platforms; and Defendants' statements within pleadings that Plaintiff holds trademark registrations in Washington and Idaho. Dkt. 75 at 10. To establish a claim for defamation, Plaintiff must prove that (1) Defendants' communicated information

about him to others; (2) the information was defamatory; and (3) that Plaintiff was damaged because of the communication. *Clark v. The Spokesman-Review*, 163 P.3d 216, 219 (2007), *holding modified by Verity v. USA Today*, 436 P.3d 653 (2019).

Plaintiff has failed to present facts that would create a triable issue on the claim. First, the alleged cease and desist letter is not in the record. *See* Dkt. 83-1 at 8. The Court has no way of analyzing or knowing its contents and whether any statements therein pertain to Plaintiff. Further, Defendants represent that the letter did not refer with particularity to Plaintiff. In response, Plaintiff presents no evidence to the contrary. Second, Plaintiff presents no evidence, other than threadbare allegations, of Defendants' activities on Facebook or other social media platforms. Third, any statements Defendants have made within pleadings in this case, or otherwise within their communications with the United States Trademark Trial and Appeal Board, are protected by litigation privilege. *See* Restatement (Second) of Torts § 586 (1977). For these reasons, Plaintiff's defamation claim fails as a matter of law and the Court will grant Defendants' motion for summary judgment as to the claim.

## 2.     Contract Claim

Plaintiff alleges Defendants breached an oral agreement made in 2012. In response, Defendants assert that there was never an agreement. Each party seeks

summary judgment in their favor on the issue of whether an oral agreement existed. For the reasons stated below, Court finds there are no facts in the record that would allow an objective, reasonable person to conclude that an agreement consistent with the allegations in the complaint and briefing existed between Plaintiff and the Salvador Defendants.

In Idaho, contract formation is typically a question for the trier of fact to resolve. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 159 P.3d 870, 875 (Idaho 2007). A valid contract requires a meeting of the minds evidenced by a manifestation of mutual intent to contract, formed by an offer and acceptance. *Id.* at 876. "In a dispute over contract formation it is incumbent upon the plaintiff to prove a distinct and common understanding between the parties." *Id.* at 876. "Proof of a meeting of the minds requires evidence of mutual understanding as to the terms of the agreement and assent of both parties." *Potts Const. Co. v. N. Kootenai Water Dist.*, 116 P.3d 8, 11 (Idaho 2005).

Here, there is no dispute that Plaintiff and the Salvador Defendants did not have a written contract. Therefore, the Court will address Plaintiff's contention that the parties created an oral contract when he offered to allow the Salvador Defendants to use the Off-Spec Solutions mark. In his complaint, Plaintiff asserts an oral contract existed whereby the parties had a distinct understanding in 2012 that (1) Plaintiff would allow the Salvador Defendants to use the Off-Spec

Solutions mark for their transportation business; (2) in exchange, the Salvador Defendants would provide Plaintiff a truck for his sole use; and (3) once the transportation company was reaching a gross profit level of one million dollars per year, the Salvador Defendants would pay Plaintiff 15 percent of their gross profit to continue to use the Off-Spec Solutions mark. *Compl.* at 5-6, Dkt. 1.

Plaintiff alleges the Salvador Defendants started to use his trademark in 2012 "without permission" or intent of payment. *Id.* However, Plaintiff alleges the Salvador Defendants did agree to conform to the 2012 oral agreement in 2015 by providing him a truck and delivery route for one year. *Id.* Plaintiff alleges that after that year of work, he had no further contact with the Salvador Defendants, yet at some point he learned they had started a new division of their company and were using "another of plaintiff's names" without payment or permission. *Id.*

The record contains the following evidence regarding the alleged 2012 oral agreement. Plaintiff testified that, in 2012, while working with Christopher Salvador, the two had a discussion about the name of Plaintiff's trucking business. Dkt. 83-6 at 29. Plaintiff testified that Christopher liked his business name, "Offspec Solutions" and indicated he thought maybe he would use it for his own business. *Id.* Plaintiff, claiming he was worried about Christopher stealing the name, testified that he made the oral offer described above, including the requirement of payment of 15 percent of the gross annual profit. *Id.* at 29-30.

Plaintiff testified that he included the high percentage figure because "it was kind of outrageous. *Id.* at 30.

Plaintiff testified further that Christopher responded to the offer by stating that he would need to talk to his brother Daniel about it. *Id.* at 31-32. The deposition testimony of Mary Hofstetter confirms that Christopher indicated he needed to discuss Plaintiff's offer with his brother Daniel. Dkt. 83-8 at 10.

Ms. Hofstetter dated Plaintiff on and off over some of the period relevant to this case and also worked for him from 2009 to 2012. *See* Dkt. 83-8 at 5-8. Ms. Hofstetter testified that she met the Salvador Defendants around 2010 when they hired Plaintiff to clean out houses they had purchased to remodel and place back on the real estate market. *Id.* at 8. She testified that, sometime during 2012, she overheard a conversation between Plaintiff and Christopher Salvador about starting a trucking company. *Id.* at 9. Her testimony includes that, although Christopher seemed very interested in the offer Plaintiff made, he indicated that he needed to talk to his brother about it. *Id.* Finally, Ms. Hofstetter testified also that she is unaware of whether Christopher ever talked to his brother about the offer.[1]

---

[1] In addition, Plaintiff submitted the results of a polygraph test administered by Bill Crawford of Freedom Polygraph. Dkt. 75-1 at 4-6. The test indicated that Plaintiff was "truthful" when asked whether, in 2012, he entered into an oral contract with the Salvador Defendants. *Id.* at 5. Defendants have made no evidentiary objection regarding submission of the results as evidence.

However, this is where the evidence in the record related to a purported agreement grows thin. Construing the record in a light most favorable to the Plaintiff, there is no evidence in the record suggesting that Christopher Salvador accepted Plaintiff's offer. The only evidence that would potentially support that conclusion is the fact that Plaintiff drove a truck for Off-Spec Solutions from 2015 to 2015. However, there is no contention that he was not paid for such work or any documentation that he was hired, or the work was done in exchange for the Off-Spec Defendants' use of his purported trademark. Furthermore, upon review of the record evidence, the Court is not required to adopt unreasonable inferences from circumstantial evidence. There is simply no evidence that the Salvador Defendants agreed to all of the terms of Plaintiff's purported offer—especially the term requiring a 15 percent annual payout of gross annual profits with no specified end-date.

Provided this, the Court finds that a reasonable jury could not find there was a mutual meeting of the minds sufficient to support mutual assent and contract formation. Therefore, the Court will grant Defendants' motion for summary judgment on the breach of contract claim.

### 3. Trademark Claims

Plaintiff brings trademark infringement claims related to the marks "Offspec Solutions," "Offspec Solutions Southeast," and "Offspec Solutions S.E." (Dkt. 1 at

6-7.) Plaintiff alleges Defendants have directly infringed on his valid trademarks, registered both at the federal and Idaho state level, and have damaged his business in the process. As with the other claims, both Plaintiff and Defendants seek summary judgment on the trademark claims. The Court will analyze the merits of the claims below.

## A.     Trademark Infringement under the Lanham Act

To prevail on a claim for trademark infringement, Plaintiff must establish that (1) he is the owner of a valid a protectible trademark; (2) Defendants used the trademark in commerce; (3) the Defendants' use of the mark is likely to cause confusion; and (4) Plaintiff has suffered damages. 15 U.S.C. § 1125(a); *Adobe Sys. Inc. v. Christenson*, 809 F.3s 1071, 1081 (9th Cir. 2015). The Court will address each of these elements in turn.

### (1)     Owner of a Valid Trademark

"It is axiomatic in trademark law that the standard test of ownership is priority of use." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219-20 (9th Cir.), *as modified,* 97 F.3d 1460 (9th Cir. 1996). Notably, ownership of a trademark is not acquired simply through invention or by being the first to register the mark; "the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.* (citing J. Thomas McCarthy, 2 *McCarthy on Trademarks and Unfair Competition* § 16.03 (3d ed.1996)).

However, when proving ownership of a trademark, the federal registration of the mark is *prima facie* evidence that the registrant is the owner. U.S.C. § 1057(b); Lanham Act § 33(a), 15 U.S.C. § 1115(a).

Provided this, "the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration, and the challenger must overcome this presumption by a preponderance of the evidence." *Sengoku* at 1220. Notably, however, the challenger may also rebut this presumption "by showing that the registrant had not established valid ownership rights in the mark at the time of registration—in other words, if the non-registrant can show that he used the mark in commerce first, then the registration may be invalidated." *Id.*

In this case, Plaintiff obtained registration for the mark "Off-Spec Solutions S.E." on November 6, 2018. (Supplemental Register, Federal Registration No. 5603439). The trademark application amendment that was eventually approved by the United States Patent and Trademark Office was dated September 18, 2018. However, the application itself was first filed on December 30, 2016. Dkt. 83-14 at 2. Thus, viewing these facts in a light most favorable to Plaintiff, he is granted a presumption of ownership of the Off-Spec Solutions S.E. mark from December 30, 2016 going forward.

Yet, as explained below, Off-Spec Defendants may rebut this presumption through showing they used the mark in commerce prior to December 30, 2016, and

prior to any use in commerce by Plaintiff. Thus, the Court must determine whether there is a genuine dispute of material fact as to whether Plaintiff or Off-Spec Defendants began to use the Off-Spec Solutions mark in commerce "first in time" prior to December 30, 2016.

### (2) Use in Commerce

"Use in commerce" is defined in the Lanham Act as the "bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a mark." 15 U.S.C. § 1127. Token use, i.e. "mere adoption of a mark without bona fide use, in an attempt to reserve it for the future, does not create trademark rights." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1157 (9th Cir. 2001) (internal quotations omitted).

Plaintiff testified that he has maintained a business in Idaho under various versions of the Off-Spec Solutions mark since 2006. *Id.* at 57-58.[2] Mary Hofstetter, mentioned above, testified that Plaintiff operated under the name "Offspec Solutions" during the 2009 to 2012 period she worked for him, and that she prepared invoices using the Offspec Solutions name. Dkt. 83-8 at 6. Beyond this testimony, there is evidence of use in commerce in the form of photographs of

signs that read, "OffSpec Solutions S.E." and "Offspec Solutions," which Plaintiff submitted with his trademark application to prove his use of the mark. Dkt. 83-19 at 23-26. Each picture shows a sign that reads "Offspec Solutions, S.E." pasted onto the door of a building, the doors of tucks and vehicles, and the bumper of a vehicle. *Id.* The record also contains a PDF image of the signature of Plaintiff's email, which includes the mark. Dkt. 83-19.

Finally, there are the CAT scale tickets—documents that are used by professional truck drivers to access weighing scales. *See* 23 U.S.C. §§ 658.1 *et seq.* The scale tickets in the record list various derivations of the name "Off Spec Solutions" as the company name for the vehicles to be weighed. *See* Dkt. 83-7 at 6; 11-61. Defendants argue the scale tickets are not evidence of Plaintiff's use in commerce of the mark because Plaintiff admitted that he provided the tickets to third party truck drivers at weigh stations, so the drivers had a ticket to provide to scale attendants. Dkt. 83-1 at 14. Finding no evidence to negate this argument, which stems from Plaintiff's own deposition testimony, the Court agrees that the scale tickets are not evidence of Plaintiff's use in commerce of the mark.

In turn, Off-Spec Defendants assert that sometime between July and August 2012, Off-Spec Solutions, LLC began providing goods and transportation services. Dkt. 83-2 at 3. Defendants provide receipts from the work, which include the business name, "Off-Spec Solutions." Dkt. 83-4. The custodian of these records

provided an affidavit as to their veracity. Dkt. 83-3. Off-Spec Defendants also provided copies of Facebook advertisements, which include the name "OffSpec Solutions." Dkt. 83-7 at 10.

Additionally, records from the Secretary of State of Idaho show that Off-Spec Defendants operated under the assumed business name "OFF SPEC Solutions" on or before August 22, 2012. Dkt. 83-24 at 25. Off-Spec Defendants also provided copies of an amendment to their certificate of organization for their limited liability company. Dkt. 83-24 at 23-24. The document shows that the name of the limited liability company was amended from Hockey Ranch, LLC to "Off-Spec Holdings Group, LLC" effective March 22, 2013.

In consideration of the totality of evidence set forth above, the Court finds the evidence submitted by Plaintiff of his "use" of the mark is not evidence of bona fide use in commerce required by the Lanham Act. Instead, the photographs of stickers on unidentified vehicles, the testimony of potential use without receipts or invoices, is just the sort of token use that does not create trademark rights.

The Court finds also that Off-Spec Defendants have presented evidence sufficient to rebut the presumption of Plaintiff's trademark ownership. Specifically, the evidence in the form of invoices from August 2012, combined with the certified record of the official name change of their company in August 2012, is the sort of evidence of bona fide use in commerce sufficient to establish a

trademark under the Lanham Act. Furthermore, Plaintiff has not presented any evidence that would raise a genuine issue of material fact as to Off-Spec Defendant's use from 2012 onward. For these reasons, the Court will deny Plaintiff's motion for summary judgment as to the trademark claims.

In making this finding, the Court need not continue to discuss the remaining elements of a *prima facie* trademark infringement claim. However, because the Court also finds summary judgment would be proper due to other deficiencies in the record, the Court will briefly discuss the remaining elements.

### (3) Confusion

Confusion is the crux of any trademark claim. *See Two Pesos, Inc. v. Taco cabana, Inc.*, 505 U.S. 763 (1992). Liability under Section 42(a) "requires proof of the likelihood of confusion. *Id*. To establish likelihood of confusion, a plaintiff must show that confusion is probable rather than merely possible. *HMH Pub. Co. v. Brincat*, 504 F.2d 713, 717 (9th Cir. 1974). The United States Court of Appeals for the Ninth Circuit established factors for courts to consider in determining the likelihood of confusion in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The factors are: (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of a plaintiff's mark; (5) the defendants' intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the

degree of care likely to be exercised by customers. *Id.* In this case, Plaintiff has not provided any examples of confusion or presented any evidence suggesting that confusion between his business and Off-Spec Defendants' business is probable.

### (4) Damages

Plaintiff must prove that there were damages due to the alleged infringement. *See, e.g., Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016). Plaintiff must prove both that he actually incurred damages and the amount of those damages. Plaintiff has presented no evidence of actual damages, let alone any reasonable estimation of the amount of damages.

In sum, Plaintiff's claims for trademark infringement fail because even construing all facts in the light most favorable to him, the evidence shows Off-Spec Defendants engaged in bona fide use in commerce of the mark beginning in August 2012. Furthermore, Plaintiff has failed to point to evidence or lack of evidence that would create a genuine issue of material fact as to the *prima facie* elements of confusion or damages. As such, summary judgment in favor of Defendants is appropriate as to Plaintiff's trademark infringement claims.

### B. Common Law Trademark Infringement

According to the record before the Court, Plaintiff has at least four Idaho State trademark registrations for variations on the Off-Spec Solutions mark. Dkt. 41 at 8. To the extent that Plaintiff's claim includes a claim for trademark infringement under Idaho Code § 48-512, the analysis is the same as above: When interpreting Idaho trademark infringement claims, courts look to the federal system of trademark registration and protection under the Lanham Act. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002). For this reason, summary judgment is also appropriate in favor of Defendants on any state-law-based trademark claims made by Plaintiff.

### C. Whether Plaintiff's Marks are *Void Ab Initio*.

As stated above, Off-Spec Defendants ask the Court to find Plaintiff's federal and state trademark registrations *void ab initio* due to Plaintiff's failure to use the mark in commerce at the time he filed them with the trademark offices. See Dkt. 41; Dkt. 83-1 at 15-19.

The Lanham Act requires that a trademark be used in commerce to be valid. 15 U.S.C. § 1051(a)(1). As stated above, use commerce must amount to bona fide use of the mark in the ordinary course of trade—not use made merely to reserve a mark. 15 U.S.C. § 1127. Use in commerce must occur "as of the application filing date." 37 C.F.R. § 2.34(a)(1)(i). At the very least, in order for an applicant to meet

the use requirement, there must be an open and notorious public offering of the services to those for whom the services are intended." *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1381 (Fed. Cir. 2015) (citing *Aycock Eng'g, Inc. v. Airflite, Inc.,* 560 F.3d 1350, 1357 (Fed. Cir. 2009)). The United States Patent Appeals Board has also found that the actual provision of services is required to constitute use in commerce *Id.*

The question before the Court then, is whether Plaintiff's use of the mark by affixing it to the doors of vehicles, a door of a building, and using it within the signature of his emails is sufficient use to avoid the determination that the registration of his federal trademark is void for failure to use in actual provision of services. Directly to the point, the Ninth Circuit has held "that using a mark in emails with lawyers and customers does not constitute use in commerce." *Telegram Messenger Inc. v. Lantah, LLC*, 2018 WL 3753748, at *4 (N.D. Cal. Aug. 8, 2018), aff'd, 782 F. App'x 528 (9th Cir. 2019) (citing *Brookfield Commc'ns, Inc.* v. W. Coast Entm't Corp.,  174 F.3d 1036, 1052 (9th Cir. 2009). Furthermore, "nor does putting one's mark on an office door sign or letterhead, or on a prototype displayed to a potential buyer." *Id.*

As related in detail above, Plaintiff's use of the Off-Spec Solutions mark at the time he filed it with the United States Patent and Trademark Office has been just so limited. The evidence applies equally to Plaintiff's non-use of his Idaho

State registrations that are direct variations of the Off-Spec Solutions mark.

Therefore, the Court finds it proper to grant summary judgment on Off-Spec's

counterclaim requesting that Plaintiff's trademark claims are *void ab initio*.

## ORDER

**IT IS ORDERED that:**

1.     Plaintiff's Motion for Summary Judgment (Dkt. 75) is **DENIED**.

2.     Defendants' Motion for Summary Judgment (Dkt. 83) is **GRANTED**.

3.     Plaintiff's Motion to Strike (Dkt. 90) is **DENIED**.

DATED: February 4, 2020

B. Lynn Winmill
U.S. District Court Judge